UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PHELISHA BENJAMIN,

                Plaintiff,

      -against-

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-2074 (NGG)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 23 2013 ★
BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are the parties' cross-motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons set forth below, Defendant's motion is DENIED, Plaintiff's motion is GRANTED in PART, and the case is REMANDED to the Social Security Administration ("SSA") for further proceedings.

**I.    BACKGROUND**

Plaintiff was born on August 5, 1971. (Administrative Record (Dkts. 26-27) ("Rec.") at 26.) Plaintiff has worked as a babysitter from 2004 through June 2008, but testified that she supports herself financially from "[s]ocial [s]ervice" payments.[1] (Id. at 27-31.)

Plaintiff has a long history of treatment for various psychological and physical ailments. For her physical conditions, Plaintiff has been treated intermittently since November 2006 at Brookdale Hospital and Medical Center ("Brookdale") and the Interfaith Medical Center ("Interfaith") for chest discomfort, asthma, pain in her sides, knee pain, and heart palpitations. (See, e.g., id. at 286, 416, 424, 518-26, 548-60, 577-83, 676-88.) She has also been treated for back pain because of her scoliosis. (See, e.g., id. at 594-602.) In addition to physical therapy,

---

[1] Plaintiff also testified that she had not earned all of the income that she reported on her 2008 tax return. (See Rec. at 27-29.)

1

Plaintiff was prescribed, among other medications, Tramadol and Abilify. (See id. at 595, 600, 681, 688, 867.)

Since August 2004, Plaintiff has received regular treatment at Brookdale and Interfaith for a number of mental impairments, including generalized anxiety disorder with panic attacks, agoraphobia, and depression. (See id. at 983; see also id. at 176, 421, 912-13.) These disorders caused Plaintiff to complain of hallucinations, hearing noises, palpitations, difficulty leaving the house, and insomnia. (See id. at 912, 961.) She was directed to undergo therapy and was prescribed Zoloft and Klonopin. (Id. at 910-11, 960.)

On April 19, 2007, with the assistance a non-attorney representative, Plaintiff filed a Supplemental Security Income ("SSI") application stating that as of November 1, 2006, she was disabled because of her depression, anxiety, panic attacks, bipolar disorder, agoraphobia, high blood pressure, and insomnia. (See id. at 93-96.) The SSA denied the application on September 12, 2007. (See id. at 42-44.)

Plaintiff requested a hearing on her application before an Administrative Law Judge ("ALJ"); on April 8, 2009, Plaintiff and her representative appeared before ALJ Linda A. Stagno for a hearing. (See id. at 23-40.) On March 10, 2010, having reviewed Plaintiff's application de novo and without any deference to the SSA, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act. (See id. at 9-22.) On March 17, 2011, the SSA Appeals Council denied Plaintiff's request to review the ALJ's opinion (see id. at 1-3), rendering it the final decision of the Commissioner of Social Security ("Commissioner"), see 42 U.S.C. § 405(g).

On April 27, 2011, Plaintiff, initially appearing pro se but now represented by counsel, filed the instant Complaint seeking judicial review of the ALJ's decision under 42 U.S.C. §§ 405(g) and 1383(c). (Compl. (Dkt. 1).) Plaintiff and Defendant cross-moved for judgment on

the pleadings under Federal Rule of Civil Procedure 12(c). (See Def. Mem. (Dkt. 21); Pl. Mem. (Dkt. 23).)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).

### B. Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as: (1) the ALJ has applied the correct legal standard; and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

## C. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.

4

> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id.

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id.

## III. DISCUSSION

Plaintiff argues that the ALJ erred in concluding that she was not disabled under the Social Security Act. (Compl. ¶ 9.) She does not dispute the first step of the ALJ's analysis, which found that, taking the evidence in the light most favorable to Plaintiff, she had "not engaged in substantial gainful activity" after April 13, 2007. (Rec. at 14; see Pl. Mem.) She does, however, challenge some portion of each of the other four steps.

At steps two and three, the ALJ concluded that Plaintiff suffers from six "severe impairments"—depressive disorder with anxious features, generalized anxiety disorder with agoraphobia, lumbar radiculopathy, scoliosis, hypertension, and asthma—but that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals" any listed mental impairment. (Rec. at 14-15.) Plaintiff claims that this analysis was not done in accordance with the "special technique" that governs mental impairments and is prescribed by the SSA's regulations. (See Pl. Mem. at 20-22.)

At step four, the ALJ found that despite her impairments, Plaintiff had "the residual functional capacity ["RFC"] to perform the full range of light work . . . except that claimant should avoid smoke, dust and other respiratory irritants." (Rec. at 15; see also id. at 15-18.) Plaintiff identifies six errors in this step: (1) improper application of the special technique; (2) failure to abide by the treating physician rule; (3) failure to properly evaluate Plaintiff's credibility; (4) lack of substantial evidence; (5) failure to specify the extent of Plaintiff's environmental restrictions; and (6) failure to request a function-by-function assessment of Plaintiff's physical limitations. (Pl. Mem. at 15-19, 22-27.)

Finally, Plaintiff claims that at step five, the ALJ erred when it concluded without consulting a vocational expert that Plaintiff was not disabled. (See Pl. Mem. at 27-29; see also Rec. at 19.)

A.      **Application of the Special Technique**

In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique"[2] at the second and third steps to evaluate alleged mental impairments. See Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." [20 C.F.R.] § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," [id.] § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. [Id.] § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. [Id.] § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. [Id.] § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. Id. § 404.1520a(d)(3).

Id. at 265-66 (footnote omitted).

Moreover, the regulations "require the ALJ's written decision to reflect application of the technique, and explicitly provide that the decision '*must* include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'"

---

[2]    The special technique is also called the "psychiatric review technique." Petrie v. Astrue, 412 F. App'x 401, 403 (2d Cir. 2011).

Id. at 266 (quoting 20 C.F.R. § 404.1520a(e)(2)). "If the ALJ fails to provide specific findings regarding the degree of limitation in each of the four functional areas, then the reviewing court will be unable to determine whether 'there is substantial evidence for the ALJ's conclusion that [the patient's] impairment, while severe, was not as severe as any listed disabling condition,' and the case should be remanded." Fait v. Astrue, No. 10-CV-5407 (NGG), 2012 WL 2449939, at *5 (June 27, 2012) (alteration in original) (quoting Kohler, 546 F.3d at 267-88).

Here, Plaintiff makes three different yet related arguments concerning the special technique: (1) the ALJ "failed to apply the psychiatric review technique at each Step of the sequential evaluation process"; (2) the ALJ "cited *to no evidence* at Step 3 supporting her conclusory statements, and it is unclear how the ALJ supported her findings"; and (3) "when making her RFC finding, the ALJ . . . did not discuss any of the functions contained in the four areas of activities in order to determine the degree of functional loss caused by Plaintiff's impairments." (Pl. Mem. at 21-23 (footnote omitted).)

Defendants argue perfunctorily that "[c]ontrary to plaintiff's contention, the ALJ employed the requisite technique in her decision," and that "[a]lthough the specific findings may not have been organized in the proper order, they are set forth in the decision." (Def. Reply Mem. (Dkt. 24) at 4 (citations omitted).)

It is clear that the ALJ failed to properly apply the special technique at step three, which alone warrants remand. The ALJ correctly recited the four functional areas that inform whether a mental impairment is severe and, if so, it equals any mental disorder listed in the regulations—(1) restriction of daily living; (2) difficulties in social functioning; (3) difficulty maintaining concentration, persistence, or pace; and (4) decompensation. (See Rec. at 15.) And the ALJ made conclusions as to each of these areas, finding that Plaintiff has: (1) moderate difficulties in

performing daily living; (2) moderate difficulties with social functioning; (3) mild difficulties maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. (Id.) But contrary to the SSA's regulations, the ALJ did not cite to a single piece of evidence nor provide any substantive analysis in support of these conclusions. See 20 C.F.R. § 416.920a(e)(4) ("The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)."). The ALJ's boilerplate recitation of the factors, followed by a simple list identifying its conclusions, "fail[s] to provide the court with specific findings as to [Plaintiff's] degree of limitation in any of those areas." Fait, 2012 WL 2449939, at *6. While the ALJ "could have properly found that evidence for each of the functional groups merited [its conclusions, it] was still obligated to provide *specific findings* justifying each of these rankings." Fait, 2012 WL 2449939, at *6; cf. Carrigan v. Astrue, No. 10-CV-303, 2011 WL 4372651, at *4 (D. Vt. Aug. 26, 2011) (affirming the ALJ's application of the special technique because the ALJ "explained these findings at step three . . . with proper citation to the record"). The ALJ's failure to "provide any analysis or specific findings as to each of the four functional areas set forth in 20 C.F.R. § 404.1520a(c)(3)" was legal error. Day v. Astrue, No. 09-CV-131 (DRH), 2011 WL 1467652, at *12 (E.D.N.Y. Apr. 18, 2011) (faulting the ALJ's application of the special technique because, in part, "while listing the activities the ALJ found Plaintiff capable of completing, the ALJ did not provide any analysis). Without such specific findings, the court cannot determine whether the ALJ's decision is supported by substantial evidence. See Kohler, 546 F.3d at 267-68.

To be sure, at step four the ALJ cited extensive evidence supporting its RFC determination. (See Rec. at 15-17.) But because "the ALJ's decision discusse[d] much of the

relevant evidence primarily in the context of [Plaintiff's] residual functional capacity to perform work and not in the context of the four functional areas identified by the regulations . . . it is not clear whether the ALJ adequately considered the entire record when determining the severity of [the plaintiff's] impairment . . . ." Kohler, 546 F.3d at 268; see also Jenkins v. Comm'r of Soc. Sec., 769 F. Supp. 2d 157, 160 (W.D.N.Y. 2011) ("[C]oincidental discussion of the special technique factors in connection with a standard RFC analysis is insufficient to satisfy the requirements of [the special technique]."); Moore v. Astrue, No. 10-CV-0709 (CFD) (TPS), 2010 WL 4976756, at *4 (D. Conn. Dec. 2, 2010) (report and recommendation) (finding that the ALJ failed to apply the special technique because although "[t]here [was] no question that ALJ Burlison discussed the evidence of plaintiff's mental impairments in her written decision . . . this was all discussed in the context of the plaintiff's residual functional capacity assessment which is insufficient to meet the requirements [of] § 404.1520a and Kohler"), adopted by Dec. 16, 2010, Order, Dkt. 15. Simply put, the court cannot supply its own reasoning where the ALJ provided none.

The Second Circuit has not definitively decided whether an ALJ's failure to follow the special technique automatically warrants remand or is subject to harmless error review. See Kohler, 546 F.3d at 269. Some courts have found that such a failure was harmless error, and chose not to remand. See, e.g., Arguinzoni v. Astrue, No. 08-CV-6356 (MAT), 2009 WL 1765252, at *7-9 (W.D.N.Y. June 22, 2009). But here, it is not clear whether the ALJ would have reached the same conclusion had he followed the regulations. For one thing, if the ALJ had properly analyzed Plaintiff's mental impairments, it might have concluded that they were as severe as those listed in the regulations, which would dictate a ruling in Plaintiff's favor. See 20 C.F.R. § 404.1520a(d). But more importantly, the ALJ's error was not harmless because the

ALJ did not consider at all in his decision significant evidence in the record that bears upon the four functional areas. See Fait, 2012 WL 2449939, at *7; Day, 2011 WL 1467652, at *13. Once again, the ALJ did not cite to *any* evidence in step 3. And even though the ALJ cited to substantial evidence in its RFC determination in step four—which, as discussed above, cannot substitute for the special technique—it entirely failed to address two mental limitations identified by treating physicians Ann Golden, N.P. and Madhu Malhotra, M.D. They noted that: (1) Plaintiff had difficulty traveling outside her home alone; and (2) had trouble concentrating. (See Rec. at 990.) These conclusions may very well affect the special technique's results because they are probative of Plaintiff's level of "social functioning" and difficulty maintaining "concentration, persistence, or pace," respectively. See 20 C.F.R. § 404.1520a(c)(3). Accordingly, the case must be remanded.

### B. Other Alleged Errors

Having determined that the ALJ erred in applying the special technique, the court does not decide the remainder of Plaintiff's objections for two reasons. First, each of the ALJ's other challenged decisions—the RFC analysis; the assessment of Plaintiff's treating physicians; the determination of Plaintiff's credibility; and the failure to consult a vocational expert (see Pl. Mem. at 14-20, 24-29)—may not be necessary if on remand the ALJ determines that Plaintiff's mental impairments are as severe as those listed in the regulations. See 20 C.F.R. § 416.920a(d)(2). Second, the court cannot say with certainty that each of these portions of the ALJ's decision have not been tainted by its error in applying the special technique. For instance, conclusions made at step three often inform the RFC determination at step four. See Davis v. Astrue, No. 06-CV-00657 (LEK), 2010 WL 2925357, at *8 (N.D.N.Y. July 21, 2010) (remanding for reconsideration of the RFC because the "ALJ's RFC determination was

necessarily affected by his findings at step three with regard to whether Plaintiff's impairments met the listing-level criteria"). Accordingly, rather than speculate as to what effect, if any, the special technique had on the remainder of the ALJ's decision, the court remands without expressing any opinion on these objections. See Moore, 2010 WL 4976756, at *5 (finding that the ALJ failed to apply the special technique such that the court could not determine whether the decision was supported by substantial evidence, and "remand[ing] so that [the plaintiff's] disability claim c[ould] be determined anew following full consideration of her mental impairments").

## IV. CONCLUSION

The Commissioner's motion for judgment on the pleadings is DENIED, Plaintiff's cross-motion for judgment on the pleadings is GRANTED in PART, and the case is REMANDED for the Commissioner to (1) properly apply the special technique; (2) reevaluate Plaintiff's credibility; (3) reevaluate the opinions of Plaintiff's treating physicians, and (4) if necessary, conduct steps four and five anew.[3]

SO ORDERED.

Dated: Brooklyn, New York
January 22, 2013

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

---

[3] Plaintiff asks the court to remand to the SSA "with a directed finding of disability, for the sole purpose of calculation of benefits." (Pl. Mem. at 29.) The court does not find that there is unequivocal evidence of disability or that further findings would be unhelpful to assure proper disposition of Plaintiff's claim; thus, a remand for further proceedings is proper. See Pokorny v. Astrue, No. 09-CV-1694 (NGG) (JO), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010); Pogozelski, 2004 WL 1146059, at *20.